We'll hear argument first this morning in Case 1063, Maples v. Thomas. Mr. Garr. Thank you, Mr. Chief Justice, and may it please the Court. Two factors distinguish this case from those in which the Court has found cause lacking to excuse a default. First, the State itself had a direct hand in the extraordinary events leading up to the default in this case. And second, the actions of Maples' attorneys, which rise to the level of abandonment, are not attributable to Maples under agency law or other principles that this Court has invoked in determining when attorney conduct may be imputed to a client. For either or both of those reasons, the default at issue in this case is not fairly attributable to Corey Maples, and the contrary decision of the Eleventh Circuit should be reversed. You talk about the State's role. I assume that you're talking about there is the failure to take action after the return of the notices. I think that's right, Mr. Chief Justice. I would couple that, though, with the fact that the State initially set up a system for the representation of indigent capital defendants that relies extremely heavily on the good graces of out-of-state counsel to represent indigent capital defendants in Alabama. Well, putting that to one side, what if only one of the three notices had been returned? I think if only one from the out-of-state pro bono counsel, I think that would be a different case. I think what's remarkable about this case is you have both out-of-state attorneys. The notices come back, Mark, return to sender, left firm in an envelope, and the clerk does nothing. And what's extraordinary about that, Mr. Chief Justice, is that the system in this case relies on the out-of-state attorneys to protect Mr. Cross. Scalia Who says so? Who says that they rely on the — you have a local attorney and you have to have a local attorney for the case, don't you? And you want us to believe that the local attorney is — has no responsibility for the case at all? Is this really what the law requires? I think there is a serious ethical obligation when he has the — when he gets the notice, he is one of the attorneys for your client, and he got the notice, right? That one was not returned. That's correct. He failed to check with the New York lawyers who were working with him. Why is that? Why is the State responsible for that? We have three points on the local counsel, Your Honor. First, the record shows that the notice is not attributable to Mr. Maples because Mr. Butler had disclaimed any relationship apart from facilitating the admission of his out-of-state attorneys. Ginsburg's claim to who? I mean, how could a clerk be expected to know that the local counsel really isn't taking any part? So was the disclaimer to the clerk? I think a couple of things on the clerk's perspective. First, we do think that it was well known in Alabama that under this unique system, out-of-state attorneys were doing all the work in these cases, and local counsel were simply facilitating their admission.  Is there a record on that point, on the Alabama system generally? A couple of things, Your Honor. First, we do have the amicus briefs which discuss that anecdotally. I would say that the State of Alabama, in its brief in opposition to this Court a few years back in the Barber case, specifically touted the role of out-of-state attorneys under its system, and as far as I could tell, didn't mention local counsel once. So I think it was fair to say that it's known that out-of-state attorneys here were doing all the work. But even if the clerk's Sotomayor, you are begging the question, which is how is the clerk supposed to know this? This is a functionary in the clerk's office who sends out notices, receives back mail that's not returned. There has to be some local counsel that does work. How is he supposed to know the difference between those that do and those that don't? I think the clerk would be imputed with knowledge, general knowledge of the system. But beyond that, what the clerk knew was this. He knew that two of the three notices that went out were returned, both to the out-of-state attorneys, which ought to be an extraordinary event in the life of any clerk. Scalia. You know, even if local counsel is, as you describe it, and nothing in the record establishes it, even if he is a functionary, surely the function would include when he gets a notice, that he makes sure that the people who do the real work know about the notice. Of course, but the point is that he didn't know the difference. He didn't perform that function. In this case, the local counsel didn't perform as a mail drop, and that was intentionally so. His own affidavit makes that clear. And I think what's important is the State itself must not have viewed him as a meaningful player. Scalia. Didn't have a mail drop? I just didn't hear what you said. My point was that ordinarily a local counsel would serve as a mail drop. He would forward notice. In this case, Mr. Butler made quite clear from the outset that he was not even performing that role. The role that he intentionally performed was to admit out-of-state counsel and to let them do the work. But the State itself did not.  Well, to whom did he make that clear? You said he made it clear at the outset. To whom? And where is that in the record? It's in his affidavit, Your Honor, in the Petition Appendix, page 256. His affidavit after the fact, right? That's right, Your Honor. Did he tell the clerk of the court that that was the case? He did not. You know, I'm counsel of record. He's the counsel of record, right? I'm counsel of record, but I don't even do so much as to forward notices to the guys that are doing the real work. Did he tell the clerk that? He did not tell the clerk. But the State itself, Your Honor, must not have viewed him as a meaningful player, because when the defaulted issue in this case occurred, the State sent a letter, faxed it to Mr. Maples directly on death row in Alabama without the court's consent. You said that even before that. In the rule you said the Rule 32, didn't you say something about it? The notice that went from the prosecutor to Maples did not go to the local counsel, right? The clerk sent out notices to all three attorneys of record, the two out-of-state counsel and Mr. Butler. Mr. Butler did receive the notice. He didn't do anything, both because he hadn't assumed any role beyond facilitating the mission. Did the prosecutor, I'm not talking about the clerk now, the prosecutor had a filing in connection with the Rule 32 motion. Did the prosecutor send that to everybody, Maples and everybody? He did not. The State, and this is at page 26 of the Joint Appendix, the State served it on his out-of-state counsel and not Mr. Butler, his local counsel. And when the default occurred, the State contacted Mr. Butler and Mr. Maples directly in prison, which would have been unethical if the State had known or believed that he was represented by counsel. But you seem not to rely on what the State, as prosecutor, did. It seemed to me the State, as prosecutor, was recognizing that Maples had no counsel, therefore said, you better file your habeas, this is how much time you have, sent it just to him. I absolutely agree with you, Justice Ginsburg. I think that is further evidence that everybody knew that Mr. Maples didn't have a local counsel in any meaningful sense. Where does the Constitution say, by the way, that you have to give notice, that every judicial action has to be noticed to the parties to the case? The Federal rules don't require notice, do they? The Constitution doesn't say that explicitly. And the Federal rules don't say it. You don't have to give notice in the Federal rules, do you? We think notice of a post-conviction order in a capital case would at least implicate a due process interest in receiving notice that it's reasonable to come to. Capital cases are different. If you are going to go to jail for life, you don't get notice, but if it's a capital case. I think under the Milito. I mean, it's either a rule for all criminal cases or it's not a rule. And if it's a rule for all criminal cases, the Federal rules are unconstitutional, you are saying. The Milleen case specifically takes into account the interest of the individual in receiving notice. There could be no greater interest of an individual than receiving notice in a capital case where the individual's life is at stake. Ultimately, we don't think this Court has to find a constitutional violation. It has to find that the events in this case are unconstitutional. Once you are in court and you have a lawyer, it's up to your lawyer to follow what goes on in the court. That's the assumption of the Federal rules, and it seems to me a perfectly reasonable assumption. And I'm not about to hold that they are unconstitutional simply because an extraordinary requirement of notice, which is not required by the Constitution, has gone awry. Here, Mr. Maples did not have an attorney that was serving an agency role in any meaningful sense. That's laid out in Ms. DeMont's amicus brief. It's laid out in our case. What's more is the State here didn't simply just, we think, quite unreasonably rely on a role that local counsel was not performing in Alabama. But your case, it seems to me, turns critically on Butler's role. How much, in addition to what he did or didn't do, would he have to do to put him in a position where he was, in fact, representing Maples in your view? I think that the ordinary role of local counsel, which would have been at a minimum for notice in a proceeding, would be a meaningful relationship. The relationship that Professor DeMont describes here is one of sub-agency. And in fact, if you look at the Alabama rules, they put the onus on the out-of-State counsel to associate the local counsel. That's at page 365 of the Joint Appendix. The out-of-State counsel did that. Mr. Maples wasn't involved in that transaction. Mr. Butler said he was. Alito, where do we look to see that it's standard practice for a local counsel throughout the country to contact out-of-State counsel when something like this is received? I remember a case from the Federal system in which local counsel appeared and did exactly what was done here, moved the admission of an out-of-State criminal defense attorney who then tried the case for a year, got sick, and the judge said to the local counsel, come on in, you're going to take over this trial and try it for the next 6 months. And the local counsel said, well, I only signed up to move the admission of this fellow. The judge said, that's too bad. You're counsel of record and you have to take over the case. I don't understand that what is alleged to have occurred here is that far out of the ordinary. I think, Mr. Butler, just simply saying, I'm going to allow, I'm going to facilitate your out-of-State attorneys to represent you, but that's my role. He had, quote, unquote, no role after that. You can't define his role as a lawyer once he appears before a court and says, I am counsel of record. He has certain responsibility. It's not up to him to say what his responsibilities are. Clearly, that's right. And if they don't extend even to forwarding notice, even to making sure that the people who are doing the legwork in the case know that the clock is running, my goodness, I can't imagine what his responsibility is. It's not up to him to define it. That's exactly our point, Justice Scalia, which is that he was for any responsibility. The lawyer in the Holland case just had those responsibilities, too. He abandoned his client. What Mr. Butler here did here was inexcusable. But there's another factor at play here, and that's the confusion that the Court itself affirmatively created when it sent an order that by its term directed that all counsel of record receive it. And that's what the order said. It's on page 225 of the Joint Appendix. And we've been saying that before you get to the Court, could I ask you about what the State attorney, the prosecuting attorney, knew? Did the prosecuting attorney know that these two individuals from New York were representing this person? Certainly, it knew that they were counsel of record in the proceeding. I'll let my friend answer that question. What we know, though, is when the default occurred, it took the extraordinary step of faxing a letter directly to Mr. Maples in prison, which would have been unethical if it believed he was represented by counsel of record. So you think you have — in your view, the counsel of record knew that these two people in New York were part of the representation. Did the counsel — I mean, not the counsel of record, the counsel for the State. Did the counsel know that they hadn't gotten the notice? Well, I don't want to speak for my friend. I don't — there's certainly nothing in the record to establish that they knew that these out-of-State attorneys didn't get notice. Is there any reason to think that the State attorney or whoever was prosecuting thought that the local counsel was likely not to do much? Yes. Yes. The very actions it took, Justice Breyer. Now, so it's possible, we'll find out later, that the State — the prosecuting attorney who works for the State knew all those things. One, he's represented by counsel in New York. Two, they didn't get the notice. Three, the local attorney isn't going to do anything. And conclusion, they likely knew he didn't get the notice, but they are asserting that this is an adequate State ground to bar him coming into habeas. Is that the correct posture of the case? That's true, Justice Breyer. So all we have to decide is whether under these circumstances the State attorney's knowledge of all those facts mean that the State cannot assert this is an adequate State ground. Right. And I think the State's actions are those facts. So he knew all of those facts. No, Justice Scalia, we don't. Of course we don't know. But we know — we know what action it took, and that action was an action that assumed that he didn't have meaningful counsel or else it would have been unethical. Let me ask you this, if I may. I don't know if — I don't think the brief's covered. It may be in there. Do you know, in Alabama and or nationwide, in how many capital cases there is no appeal? I don't know that, Justice Kennedy. I think the Alabama system here created a system in which it would allow for appeals not only in direct appeals, but post-conviction proceedings. The extraordinary — there are several extraordinary features of the Alabama system, and we think that ultimately they help to facilitate the extraordinary and shocking events in this case. What if the New York lawyers did not abandon Mr. Maples prior to the time that they left their law firm in New York, right? That's right. So their conduct prior to that time would be attributed to him, right? I think that's right. Right. Part of their conduct was setting up their arrangement with Mr. Butler, where he would show up as counsel of record but not really do anything. So why aren't the consequences of that arrangement attributed to Maples as well? Well, I don't think they would be attributed. I think what you're looking for is whether the default itself is attributable to Maples. New York — what the out-of-state attorneys did is they left the representation without fulfilling their duty to notify the court or Mr. Maples. Mr. Maples was sitting in a prison cell in Alabama under the reasonable belief that he was represented by counsel who would appeal if an adverse decision was issued. Mr. Garrett, can I go back to Justice Kennedy's question? This was not an appeal. The question was how many capital cases are — is there no appeal? He had been convicted and had appealed, right? The direct proceedings had concluded. The direct proceedings were over. He had appealed up to the State supreme court. Did he seek cert here, too? He did. He did. And this was a post-conviction. It was. But when the State sets up that system and allows for appeals, it can't arbitrarily deprive it of an appeal based on the sort of circumstances here. But I don't think it's extraordinary that there be no appeal. I'm not aware of any State that does not allow appeal in post-conviction proceedings. It's allowed, but it would not seem to me extraordinary that it not be so. We saw it. But I think what — Kennedy, in this case, there was a direct appeal. And then there was this proceeding that we're talking about here. The trial judge waited for 18 months. So you would think there's some merit to the underlying claims. Kennedy, any statistics on whether or not — on how often an appeal is abandoned or not pursued in this kind of case? No statistics? No. I mean, the statistics that I'm aware of are that habeas claims are, in a material sense, often successful in capital cases. We cited those in our reply brief. Here we think the underlying claims are quite serious. The question in the case is really not who shot the victims. The question was whether Mr. Maples was going to be convicted for capital murder or murder that would result in life imprisonment. I'm aware of the allegations. And I think going back to the Court's and the clerk's actions here, one of the things that exacerbated the chain of events here was that you had an order which directed that all parties would be served. Mr. Butler did say that he saw that that order directed that the out-of-State  convicted. Sotomayor, I have two questions for you. Is this State the only one that doesn't appoint counsel in a post-conviction capital case? Well, I believe that Alabama may appoint them. They don't provide for appointment in all cases. I believe Georgia is another State. But in that respect, I think it's a good tell of one. But the vast majority do? Absolutely. In capital cases? The vast majority do. All right. Number two, I thought there were two questions in this part of your case. The first is, don't we have to decide that abandonment, which you've termed, is cause? Yes. In a to excuse a procedural bar in a State court? Right. So we have to decide first whether we extend Holland to this setting? Well, I think there are independent grounds. If the Court concludes that the State's own actions. That's the due process. I'm talking about yes, both we would have to decide. Assuming we have to decide the first question is will we extend Holland to this type of situation? I don't – I just want to be clear on this. There are independent grounds. If the Court concludes that the State actions. Yes. I understand. With respect to the attorneys, that's right. Yes. Could we find that? What is the line, Mr. Garre, between abandonment and just plain old negligence? It would be the line established by agency law going back to Justice Story's time. So if this local counsel simply goofed in not advising the people that were doing the legwork in the case, why is that abandonment? I think it's actually more of a situation where he disclaimed any meaningful role at the outset. I think, you know, the real abandonment going on here was the attorneys in New York who laughed without notifying the court or their client. But that would be the case. Alito, putting aside the question of local counsel, could we find that there was an abandonment if the law firm of Sullivan and Cromwell continued to represent Mr. Maples after the two young attorneys left the firm? The court could. And does the record show that they did not represent Mr. Maples, that this was done purely by the two attorneys? Is there a finding by a court on that? There's not a finding. We think that's the better reading of the record, and I'm happy to explain why. But most importantly, we think it's irrelevant whether he was represented by the law firm in the fictional sense. He was represented by individual lawyers in that proceeding. They were the ones that Mr. Maples agreed to have represent him in that proceeding. The Alabama courts made specific findings that Mr. Maples' lawyers were Ms. Ingenhouse and Mr. Monaca. It said that after the fault. At that time, it didn't say that.  The great practice of a law firm, these were very junior people. Wouldn't the law firm have to have some involvement in giving them permission to provide this representation? I mean, usually there's something like a pro bono committee and higher level. Can such junior associates just go ahead and say, we want to spend a lot of our time defending a man on death row? Wouldn't they have to get some kind of permission? I think one would ordinarily expect that, and we're not condoning the actions here. I would say that at the outset of this litigation, there were individuals from Legal Aid Society who were well familiar with capital cases involved. They apparently dropped out of the case. But we know. But what do we know about Mr. DeLue's role, Mr. Garre? What we know is what Mr. DeLue has said, which is that he was involved in the case at some point. It's not clear what his involvement was. At the oral argument in the Eleventh Circuit, he said on page 302 of the joint appendix that he was they were waiting for their action from the court. So we don't know what his involvement was. Sotomayor, we don't know. We don't know. Isn't that just proof that if we were to find that Holland applied, Holland exception applied, that we would have to remand this case? I think that would be appropriate, Your Honor. Of course, we think the Court should find that the Holland exception, or more particularly In that regard, there is one part of Holland that you don't really address, which is that Holland contrasted a statute of limitations issue with respect to access to a Federal court with a procedural bar and said that the State's procedural bar had interest of Federalism, that we had to be cautious of ignoring a State procedural bar because of Federalism. If we were to extend Holland in the way you want, how do we justify ignoring Federalism in that situation? That's right. There are those distinctions. Our point is that Holland recognizes that attorney conduct that amounts to abandonment is external to the client under agency and other principles. Coleman itself recognizes that external conduct is not attributable to the client and can't be a basis for cause. So the Federalism interests are simply not implicated in a case where you find that the attorney's actions are external. And we think if you look at the principles you looked at at Holland, agency law going back to Justice Story's time, the principles of professional standards of care, you would find that in abandonment, of course, that must be external to the client. Justice Alito said in his concurrent opinion that where someone is not acting as an agent in any meaningful sense, it would be grossly inequitable and unfair to attribute the agent's conduct to the client. That's the principle we're asking. Kagan. Kagan. Could we go back to the state of the record? You've said a few times, and your brief does, that the record is skimpy on various important matters. Would you go further and say that the record is irretrievably corrupted, tainted by conflicts of interest? I think there are conflicts of interest here. They're laid out in the legal ethics briefs. The Sullivan and Cromwell attorneys were representing Mr. Maples up through the argument and decision in the Eleventh Circuit. But I think for purposes of what this Court would do, I think a remand would be appropriate, because if you conclude, as we think you should, that abandonment of counsel would be an external factor, then it would be appropriate to remand for further proceedings. We don't know what these other attorneys were doing. The record doesn't show that. We do know, though, that they were not counsel of record. We absolutely know that they were not. So we know that the two who were listed as counsel of record were not representing him and they hadn't told the Court. They were not counsel of record. Mr. Maples never agreed to have anyone else represent him in a way that could bind him. The Alabama court specifically found not only that they weren't counsel of record, but they were not authorized to practice in Alabama. This is on page 223 of the Petitioner's Claim. Scalia. But it seems to me it's up to you to produce the facts that would justify our reversing the case, that you're asking us to do. And you say, well, we don't have these facts. Well, send it back so I can go, you should have gotten the facts in the first place. If the record doesn't show the things that you need to show to get this case reversed, the case should not be reversed. The Petition did include a request for an evidentiary hearing. I think the problem is that both the district court and the court of appeals short-circuited the inquiry into counsel's actions because it believed that Coleman v. Thompson applied in the abandonment situation. And where a court made that kind of legal error, it would be appropriate for the court to send it back and say, no, Coleman v. Thompson does not apply in the extraordinary case of abandonment, where an attorney's actions can't be attributable to a client under agency law. Scalia. When did you first make the abandonment claim? Well, I think we've argued that the attorney's actions established cause. Wasn't it first made in the request for re-hearing? I think explicitly. Now, we think that we think that all along they argued that the attorney's actions established cause. That's why both the district court and the court of appeals addressed that and rejected it erroneously under Coleman. That is an abandonment. That is an abandonment. The attorney's actions established cause. That does not mean abandonment. We think this falls squarely within the rule of viva v. Escondido, where the party makes the claim below, which they made the claim here that the attorney's actions established cause. You can make new arguments, different arguments. And I think particularly given that Sullivan and Cromwell had been involved earlier in this case, and the possibility of conflicts of interest would make it appropriate for this Court to consider our abandonment issue, which was raised in the petition for re-hearing explicitly, raised in the petition for certiorari explicitly. We think it's properly before this Court. If there are no further questions at this time, I'd like to reserve the remainder of my time. Thank you, Mr. Garre. Mr. Nyman. Thank you, Mr. Chief Justice, and may it please the Court. In trying to sidestep Coleman, Maples is advocating at least three principles that are incompatible with the way our justice system works. First, Maples is asking this Court to hold that due process required not just actual notice to his attorney of record, John Butler, but in fact something more than that. Let's say the three notices are sent out. All three of them come back. Okay? Let's even go further and say the prosecutor knows that nobody representing Mr. Maples received notice. What happens then? In that case, Your Honor, there would be a much more substantial argument. Yeah, I know it would be more substantial. That's why my question is, what happens? Are you prepared to acknowledge that in that case Mr. Maples had been abandoned by all of his lawyers, it was known to the prosecution, and therefore the failure to file the notice should not constitute an adequate and independent state ground, barring collateral relief? I don't think that the return of all three notices would justify necessarily a finding of abandonment in toto by all the lawyers. It could signify a number of things. I do think that it would raise questions about whether the clerk had a due process obligation to do more under Jones v. Flowers. Scalia. Scalia. What does the return mean when you get a notice returned? It just said no longer at Sullivan and Cromwell, is what the two of them said, right? Yes, Your Honor. Does that necessarily mean that they've abandoned the case? It just means you got the wrong address, doesn't it? That's correct, Your Honor. Isn't that the only thing it means for sure? These lawyers are no longer here at Sullivan and Cromwell. Yes, Your Honor. I don't know how that would be an indication of abandonment. Can't you switch a law firm and keep the client? Absolutely, Your Honor. The presumption generally is that the client stays with the firm, but that's correct. The client certainly can move firms when the lawyer moves. Mr. Niemann, I think we're blurring two issues. We're not talking about abandonment in this respect. We're talking about a notice going to no one and a clock ticking from a certain date that no one knows about. I mean, they were preparing for a hearing before this judge, so they weren't anticipating that he was going to rule without anything further. That's correct, Your Honor. They certainly were preparing for an evidentiary hearing. And in fact, contrary to my friend's statements about what we know about Mr. DeLue's involvement in this case, on page 228 of the JA, Maples expressly alleged that DeLue and others at Sullivan and Cromwell were preparing for the evidentiary hearing. But as far as the record shows, DeLue is not on the record at all. There are three counsel of record. Two of them were — let's go back to this — the first issue. The State, by its own conduct, showed it didn't regard Butler as any kind of representative because it didn't even send its Rule 32 response to Butler. Isn't that so? No, Your Honor. I respectfully disagree with that assessment of how we can read the service of the Rule 32 answer. Under Alabama law, a pleading or an order may be served on only one counsel of record when a party has multiple counsel of record. So, for example, that answer was served upon Mr. Menonca at Sullivan and Cromwell, but it was not served expressly, at least, on the Ziggins case. What about the notice that he's — he had lost in the Alabama courts and he better, if he wants to go to the Federal court, do something about it? That notice went only to Maples, right? That's correct, Your Honor. The State's attorney in that instance decided to send a letter only to Mr. Maples. And Mr. Gare made the point that if Maples were represented, that that would be improper. To send the notice to Maples alone, so the State's attorney must have thought that Maples had been abandoned by his lawyers, because it didn't notify any of them. Your Honor, the record does not reveal why Mr. Hayden decided to send the letter to Mr. Maples alone. Of course, he didn't have to send the letter. That letter had no legal effect, did it? That's correct, Your Honor. I mean, it was just, by the way, your time has expired. I mean, this has not — what could the lawyer do about it? It wasn't a required notice that he had to give to the lawyer or to anybody else. That's correct, Your Honor. So he just made this extraneous, volunteered statement to Maples instead of to his lawyer. I don't know what that proves. At that point in time, the State case was over, so it was hardly clear if Mr. Hayden was going to do something that he didn't have to do under the rules. Why did he do it? Why did he do it, then? Just gloating that the fellow had lost? What was the point of it? He must have thought there was a problem, right? Your Honor, he certainly was aware that Mr. Maples' lawyers had failed to file a notice of appeal. But — and his letter reveals that he's very aware. Is that surprising? I think Justice Kennedy asked your adversary, how often do appeals lie from the denial of State postconviction remedies? Your Honor, I agree with my friend that we don't have statistics on that front. I think it's fair to assume that, for the most part, when a Rule 32 Petitioner loses at the trial stage, they're going to appeal. In a capital case. Particularly in a capital case. That's correct, Your Honor, although there are some instances in which a capital case where a Petitioner or someone on death row decides that they no longer want to invoke the process of the courts and they're ready for their sentence to be carried out. Kennedy, I just have two questions going back to the very beginning when we were talking about the misaddressed or the unreceived mail. When the notices come back no longer at Sullivan and Cromwell, that's just as if it said functionally, don't you think, wrong address? Not quite, Your Honor. I think that the notice saying that the person is no longer at Sullivan and Cromwell indicates that the person is no longer at the firm. I guess a notice could come back and the person is no longer at the firm. But I mean, it's pretty clear that they didn't get the mail because it said to get the letter because it was sent back. That's correct, Your Honor. One other thing while I'm talking with you, and it's a tangential point, perhaps. Could the State of Alabama, under your laws, waive what you allege to be the procedural default? If you thought there was substantial merit to the underlying claims, even though you take the position that they ultimately should be rejected, could you have simply waived the procedural default and allowed the appeal to proceed? I don't think the law makes that crystal clear, Your Honor. But I certainly know of no law that suggests that the Attorney General of Alabama necessarily has to assert every single potential defense within his or her arsenal. Has Alabama ever waived lack of timely appeal in a capital case? I'm not aware, Your Honor. Counsel, could we go back to the Chief Justice's initial question? Let's assume the two letters went to Sullivan and Cromwell and came back left firm, as they did, and that the letter to Butler came back deceased. Would there be cause in that situation to excuse the State's procedural ground? Perhaps, Your Honor. It would depend on why the letters came back from Sullivan and Cromwell, I suppose. Sotomayor, we know that both lawyers in this case didn't move to another firm. Both of them took jobs that precluded them from representing this defendant. So I don't know how I define abandonment other than I take a job where I can't work for you anymore. The cause argument in that case, Your Honor, would be substantially stronger, as I said before, in part because death, of course, is an external factor. So you accept the question, but so you accept the idea that there is a distinction between malfeasance and abandonment? Your Honor, I think that we would be prepared to recognize that in certain cases an abandonment of a client by an attorney would terminate the agency relationship with the attorney and client. Okay. So then the only thing we're talking about is whether on these particular facts there has been abandonment or not, right? That's correct, Your Honor. From your perspective. Yes, Your Honor. But one thing I do want to stress is that my friend has suggested that an evidentiary hearing or further evidentiary proceedings are necessary on this particular question because we don't know what role the other attorneys at Sullivan and Cromwell played in the matter. But we do know they were on counsel of record. We do know that the only two counsel of record were no longer representing him, and he had no reason to know that they weren't, but they were not, they couldn't represent him. The two, the only two out-of-town counsel were the two who disabled themselves from representing him by taking other jobs. Your Honor. So there was no one from Sullivan and Cromwell other than those two on the record. So on the record, they had abandoned him and there was no substitute. I disagree with that assessment, Your Honor. Well, the argument is that on the record or not is determinative for the out-of-town counsel, but it is not determinative for the in-town counsel. The fact that he is counsel of record doesn't count, but the fact that those two are does count. And only when you combine those two does the man have no counsel, right? Yes, Your Honor. There is that inconsistency in Maple's argument. On the one hand, Maple says that Butler or that the other lawyers at Sullivan and Cromwell weren't his attorneys because they weren't counsel of record, but Butler was counsel of record, but he wasn't his attorneys. General, the notice inquiry is supposed to be a pragmatic one. As far back as Mullane, we've said that the question that we're supposed to ask ourselves is, is this what somebody would do if they actually wanted to accomplish notice, if they actually wanted the person to get that letter? So I'm just going to ask you, General, if you were a lawyer in an important litigation and you send off an important letter to two lawyers, your principal adversaries, as well as to a local counsel, who you think may not be involved in the substance of the litigation, you don't know for a fact, but you think that there is some substantial likelihood that he's not particularly involved, as local counsel often aren't. So you send off this letter and you get it back from the principal attorneys and you ask yourself, huh, should I do anything now? What would you say? Waxman, Your Honor, I suspect that in those circumstances, I might well personally do something else. But, of course, my prerogatives as Solicitor General of Alabama are quite different from the prerogatives of a clerk in Morgan County, Alabama. Scalia, Well, and the clerk has to believe that it's an important letter, right? It's not important enough to be required by the Federal rules. How important is it? Justice Scalia is right. I'm assuming that a letter disposing of a ruling in a capital case issued after 18 months when nobody knew that that letter was coming, that that's an important letter for a death row person to get. So Justice Scalia is right to that effect. So you get this and you say, well, you would have. But that's the question that we have to ask about the clerk as well. The clerk, the question for the clerk is, if he had really wanted the person to get notice, what would he have done? No, Your Honor, I disagree. The as far back as Mullane, this Court has said that at the end of the day, actual notice to a party, particularly within the jurisdiction, is the finish line for due process purposes. Mullane expressly said that. The arguments that you're making in this capital case, which is sui generis, are pushing the Court to consider rules that would have far-reaching effects, such as a rule that places upon a clerk of the court a constitutional obligation to serve counsel with important documents in the case similar to the constitutional obligation to serve initial process in the case. And the question that I would like to ask is whether this the – whether you as a Solicitor General or the Attorney General of Alabama have an obligation to push this matter in this way. This is a case where, as I said, it's a capital case, as we all recognize. Mr. Maples has lost his right to appeal through no fault of his own through a series of very unusual and unfortunate circumstances. Now, when his attorneys moved to file an out-of-time appeal, why wouldn't you just consent to that? If he did not receive an effective assistance of counsel at trial, why not get a decision on the merits on that? Why push this – this technical argument? There are several responses, Your Honor. First, at least at the Rule 32 stage, the notice of appeal deadline was a jurisdictional one. And you're right, the State did oppose the motion for an out-of-time appeal, but there wasn't much the State could have done, even if it had consented on the front. There's no possibility under Alabama rules for an out-of-time appeal in this circumstance, no extension? The holding of the Alabama courts here, as recognized by the Eleventh Circuit, was that this would not be an appropriate circumstance for an out-of-time appeal. Now, as to the question about whether the State's discretionary matter or is that a flat rule, once you've passed a certain time deadline, you're out of luck. There's no opportunity where there's good cause for an extension. There is opportunity where there's good cause for an extension, but the – what the court held here, what the Alabama court held here was that this circumstance in which the person has counsel of record and counsel of record haven't notified the court of their changes of address, and more importantly, Mr. Butler, who was, in fact, serving as Mr. Maples' agent in this case, had received an out-of-time appeal. Kennedy, I suppose, to my earlier question, and just to continue Justice Alito's line of questioning, if the State of Alabama had told the State court, in all of the circumstances, we think there should be an out-of-time appeal granted, are you indicating that the State court said, well, that's a good idea, but we can't do it because it's not appropriate in these circumstances? That seems to be the holding of the court of criminal appeals in this case, Your Honor. Did you oppose it? Did the State oppose the out-of-time appeal? Yes, Your Honor. The State did oppose the out-of-time appeal, and the State pressed the procedural bar in Federal court in this case. But the State had every prerogative to do so, in part because this court recognized in Coleman a case where the Petitioner undoubtedly could have said that he lost his right to appeal through no fault of his own, that the State had the power to do that. There are good reasons for the State. Kennedy, could the State in the Federal litigation have waived the procedural default? Your Honor, I think the law is not exactly clear on that, but I know of no law that would say that the Alabama attorney general has to press every single non-jurisdictional defense at his or her disposal. But he did not do so here and had good reason not to. That's in part because Coleman says that this is how procedural defaults work. There are good reasons for procedural defaults. They are grounded in the same equitable principles that the State has. But you agreed with me earlier that abandonment is an exception to the adequate and independent State grounds. So under your view of the case, Coleman was not necessarily controlling. Your Honor, if I suggested that abandonment itself is an exception to the AISG doctrine, let me correct my earlier answer. My suggestion is that abandonment can sometimes allow a court to determine that a particular lawyer has become external to a client, that the agency relationship has been terminated. Of course, merely becoming external to the client doesn't mean that the abandonment itself will constitute cause. The abandonment also or the lawyer's ending of the relationship would also have to impede the ability of the remaining members of the defense team or the defendant himself to comply with State rules. And here, even if there's some argument that Ingenhouse and Minaka abandoned their client, which I don't think there is on this record in light of the way they left the case with Butler, Mr. DeLue, and others at Sullivan and Cromwell, even if there were some argument on that front, it's not clear that the actions of Ingenhouse and Minaka actually impeded the ability of the remaining members of the team to do what they wanted to do. Ginsburg. When lawyers stop representing a client, as the two did, isn't there some obligation of them to tell the client and the court, we're no longer representing you, and arrange for substitution? There's never any substitution on the record of the other counsel. The record said these two people are representing Maples, and those two weren't. They never told the court and they never told Maples. Isn't there some obligation on their part to the court when they stop representing a client to advise the court? Yes, Your Honor, I think there is, but I don't think that means that what happened here constitutes cause. The record is clear. Mr. Maples himself has alleged that Ingenhouse and Minaka arranged for this case to be handled by Mr. DeLue, and the record makes clear that Mr. DeLue was involved in this case in representing Maples even before the default occurred and even before Ingenhouse and Minaka were at the same time, even before Ingenhouse and Minaka left. Breyer. Is it — I'm still unclear on one factual thing. Did the State's attorneys know that the letters had come back? Your Honor. Should they have known? Your Honor, the record is not clear on that point. I can represent to the court that the State's attorney did not know that the letters had come back. Do they check the docket every so often to see what's happened? Most attorneys have an obligation at some point to check the docket, and that's one problem with the position that Mr. Maples has taken regarding Mr. Butler here and the ability of these parties to obtain information from the court. But in this case, it's my understanding, this is not on the record, but it's on the record obviously before this Court now, but it's my understanding that the State had no idea that Mr. Maples' attorneys had not — Mr. Maples' two attorneys in New York had left their firm or had— Ginsburg. Why did they send to Maples alone the notice to better file it for Federal habeas? They didn't send it to those counsel. Where did they — what made them send that notice directly to Maples and not to either of the Sullivan and Cromwell lawyers? Again, this is information that's not in the record, Your Honor, but it's my understanding that counsel looked at — figured out what had happened, figured out that the appeal had been missed, had calculated how much time Mr. Maples had to file his 2254 petition, and based on his 20 years of experience, said that in light of the fact that the State court proceedings were over, the most prudent thing for him to do would be to send the letter to Maples himself. So he had figured out that something had terminated the relationship between Mr. Maples and his lawyers? No, Your Honor. I don't think that's — I don't think that's an accurate characterization of what exactly happened in this case. But in the very least, he knew the lawyers had missed the deadline. Even if you assume that he had figured it out, that you would have to impute his knowledge to the clerk of court to find the fault on the part of the State that's alleged here? Well, more so than that, Your Honor. Did he tell the clerk of court that he was only going to send it to Maples? As far as I know, no, Your Honor. But of course, the clerk — the notices came back to the clerk long before the State's attorney sent the letter in this case. But that's an important point, I think, both with respect to the clerk issue and also the abandonment issue. The relevant question here is not what the assistant attorney general of Alabama thought had happened in this case. The relevant question on the clerk issue is what the clerk knew, and that, of course, is governed by Rule 7 of the rules governing admission to the Alabama bar. The relevant question on abandonment is had Maples, in fact, been abandoned? Had these attorneys left him completely without counsel? And the record definitively establishes that that had not happened, both because Mr. Butler remained counsel here in a much more meaningful way, I think, than my friend suggests. Sotomayor, could you tell me — I'm assuming you've practiced in your State for a while. Yes, Your Honor. How frequent is it in the Alabama capital system that local counsel takes the laboring or even an active participation in the defense or actions of a capital defendant? Your — the amici here says generally they did what Mr. Butler did. They just facilitated the admission of the volunteer attorneys. Was that your experience? Your Honor, of course, that information is not in the record. We respectfully disagree as a factual matter with the factual assertions made by the amici on that front. All right. We have to send it back. I guess we have to say what the rule is. So what is the rule — what about a rule that says where, in fact, attorneys do abandon the client and the local attorney does, as a matter of practice in the State, do virtually nothing except to facilitate foreign representation, and where the State had cause to believe, cause to believe that all that was true, then the State cannot assert this is inadequate ground. That's all. Your Honor, a remand would not be appropriate in this case on those grounds for a number of reasons. One is that Rule 7 of the rules governing admission to the Alabama bar made emphatically clear that the role of local counsel was not simply a no-go. Irrespective of what the rules were, you would have to show that in fact in the State, it is a practice such that the local counsel doesn't do much, if anything, except facilitate, because this is a state of mind as to whether the State and if the State knows that. If he shows both of those things, and shows that the letter came back, and shows this was abandonment or close thereto, then the State ought to know that this individual has no idea about filing a piece of paper and thinks somebody else is doing it. And that's enough to say this is not adequate State ground that would block Federal habeas. Now, your argument against that is what? At least twofold, Your Honor. One, as a simple matter, those factual assertions were not made below. So in order for the Court to remand on that particular issue, it wouldn't be a remand for an evidentiary hearing on whether those allegations were true. It seems in the briefs, there's certainly a lot in the briefs that seem to say that. There's certainly a lot in the briefs that says that. But one problem Mr. Maples faces here is that he had the burden as the Petitioner in this habeas proceeding to make the requisite factual allegations that he believed would establish cause. Mr. Niemann, am I correct that under the Alabama rules, when an attorney is represented by more than one attorney, the notice does not have to go to all of them? That is correct, Your Honor. It can only go to one? Yes, Your Honor. So as far as local counsel knew, he was the only one to receive notice of this thing, right? That's correct, Your Honor. Is it correct or does the notice, most of the notices I see, list the people who have been served? Were the New York people listed on the notice that went to Butler? Yes, Your Honor. The notice that he knew he wasn't the only one getting notice. He knew that he was the only one who was supposed to get notice. Well, the CC line in this case cannot establish cause and cannot be deemed State interference for any number of reasons. The first is that I suppose it could only be held to establish cause if it would have been reasonable for Mr. Butler to assume that the CC line communicated the message that it was perfectly okay for him to do nothing and to not take further action based on what is in the CC line. And there are at least three reasons why that would not be a reasonable reading of the CC line. The first is that the CC line doesn't communicate that Ingenhoutz and Menaka, who are the people listed on the CC line, will in fact receive the order. All it says is that the order would be sent to Ingenhoutz and Menaka. The second is that the — even if it would have been reasonable for him, for Mr. Butler to assume that Ingenhoutz and Menaka would receive the order in this case, it would not have been reasonable for him to have done nothing, given that Rule 7 of the Alabama rules made him jointly and severally responsible for — to the client and to the court in this case. Sotomayor, I guess the problem is, accept the rule, it exists. But if a lawyer says, I don't care, I'm not going to do whatever the rules require me to do, what more do you need for abandonment? If a lawyer comes in and says, I understand this is a rule of the court, I understand that I'm supposed to do X, Y, and Z, I don't care. I'm just not. That's the question. What's the difference between I don't care and abandonment? Mackey, Your Honor, I guess I should make a couple of points in response to that. The first is that, as I understood the question posed about the CC line, that is all about not abandonment, but whether the clerk's actions can be blamed for — or the default can be blamed on the person. Sotomayor, we're not talking about the notice issue. We're talking about the abandonment question. On the abandonment question, if it really were — if it really is true that Butler had decided he was going to do nothing in this case and not represent his client and not be an attorney for the client, then there might be a viable argument that Butler was not — was not — had abandoned the client in some way, but that is not the — a reasonable reading of the record in this case. Scalia, if we find that these lawyers did abandon their client, will there be some sanction imposed upon them by the bar? I often wonder, just as when we find that there has been inadequate assistance of counsel in a capital case, does any — does anything happen to the counsel who have been inadequate in a capital case? Mackey, Your Honor, I suppose it would depend on exactly what the allegations are that the — Scalia, have you ever heard of anything happening to them other than they're getting another capital case? Mackey, Your Honor, I have not. Certainly, the rules would provide that a breach of the rules of professional responsibility would be sanctionable by the State bar, both against the Alabama attorney here and the New York attorney. Roberts, you said a few moments ago that Butler did more than your friend suggested. What more did he do? Mackey, Well, of course, we've discussed in the briefs the very — the undisputable fact that Butler filed numerous things after the default occurred in this case. But even Butler's — Roberts, Well, after the default, sure. But what did he do before? Mackey, Butler's affidavit certainly — that was filed in the State court proceedings certainly doesn't say, I'm — I was in this only to swear these people in or move for their admission and nothing else. What Butler says — Roberts, What did he do more than that? Mackey, Butler said — says on page 255A of the petition appendix that he agreed to serve as local counsel. Local counsel has a specified meaning under Alabama law. Roberts, Well, you made a fairly serious suggestion that your friend had not accurately represented what Butler did. And you still haven't told me one thing he did more than move the admission of the out-of-town attorneys. Mackey, Well, let me withdraw any suggestion that I'm saying that Butler had, in fact, done something that's — that's clear on the record. My time is up. May I finish? Roberts, Sure. Mackey, My point was that Butler did not simply agree just to move these people — move these people's admission. Butler said he would be local counsel. And local — the role of local counsel is defined by Rule 7. It includes an obligation to attend hearings, conferences, and the like. It also includes— Roberts, Thank you, counsel. Mackey, Thank you. Roberts, Mr. Garre, you have four minutes remaining. Garre, Thank you, Mr. Chief Justice. We agree that this is a summa generis case. The facts are extraordinary. The facts are shocking. And our position is simply that under this Court's precedents and the extraordinary facts here, Mr. Maples has established cause to excuse the default. With respect to local counsel, apart from the fact that the State communicated directly with Mr. Maples an extraordinary step after the default, maybe the other telling thing is that in 2006, Alabama itself eliminated the local counsel requirement for pro bono proceedings, recognizing that it could only create problems. It didn't add anything. With respect to abandonment, I understood at times my counsel, my friend, to acknowledge that abandonment may establish an external event with respect to the client. If that's so, then I think it's clear that we're at a minimum entitled to a remand. There were statements about what was clear from the record. I think at a minimum, the record is not clear on a number of things that this Court would have to get into if it were going to consider adopting the State's position that Mr. Maples was not abandoned. Mr. Maples was in a prison cell. His attorneys of record did not tell him that they had left the firm. They were required not only to tell the Court that he was not abandoned, we have to adopt your position that he was abandoned. And you have a record of the attorneys leaving without only notifying Mr. Maples, not notifying the Court, and not obtaining the Court's approval, which is required by Rule 6.2 of the Alabama Rules of Criminal Procedure. Alito, what is troubling to me about the abandonment argument is that, is the fear that if the Court says that abandonment is caused, there will be many, many cases in which the allegation is my attorney wasn't just ineffective and negligent, the attorney was so bad that the attorney in effect abandoned me. And that will substantially change existing law. Now, how can that be prevented? Working through agency principles that go back to Justice Storey's time, working through the principles established in this Court's decision in Holland and that will be applied in Holland, the lower court in Holland issued its decision on remand, found that Mr. Collins had abandoned Mr. Holland, using this Court's precedent as a guide. So I think Holland already recognizes that attorney abandonment can be external. We are just asking the Court to apply the same principles and recognize that what's external in one context cannot be not external in another context. Sotomayor, do you know how often Holland's relief has been granted since it's very recent, but how frequently Holland's relief has been granted by the courts below? I don't know the answer to that question. I'm not aware of any flood of relief in such cases. I expect that this would be very extreme. I think the facts here are about as extreme as you can guess. Mr. Gart, how do we distinguish between abandonment and simply a botched, a very botched transfer of responsibility within a law firm? Well, where you have counsels of record leaving without obtaining the approval that they required or telling the court, I think that that is abandonment pure and simple. Beyond that, you would look to agency principles, whether there's a breach of loyalty. This is going to be a fact. You would want to get into the facts, although I think it is a very high bar. I think the Holland decision makes clear it's a high bar. I think this case clearly passes that bar, but it's something that the courts will work out applying agency principles, applying this Court's decision in Holland, recognizing what Holland said in this case isn't going to create any new rule. It's simply going to extend logically the recognition that attorney abandonment is external to the client, as it always has been under agency principles. With respect to notice, this Court doesn't have to find a constitutional violation on the State's part. It's enough for cause that the Court finds that the State's actions are external. And I think the key inquiry is what Justice Kagan recognized, which is you look to what a person who is actually desirous of providing notice would do. In this situation, the clerk got two notices back, left firm. It opened it up. It would have seen this as an order in a capital case, and it did nothing. I don't think anyone who actually desired to provide notice of an inmate whose life on the line would do nothing reasonably in that situation. Mr. Maples is not asking to be released from prison. He's asking for an opportunity to present serious constitutional claims of ineffective assistance of counsel to a Federal habeas court on the merits. If the claims are as meritless as the State suggests, that clearly will have little burden on it. But simply allowing those claims to be adjudicated on the merits in Federal court will go a long way to preserving the legitimacy of the system of criminal justice in a case in which a man's life is at stake. Thank you. Roberts. Roberts. The case is submitted.